Good morning, Your Honors. My name is David Zugman. I represent Petitioner Marco Antonio Damian. If I could reserve a couple minutes for rebuttal, that would be wonderful. Your Honors, usually in these habeas cases, we're talking about was there error? What happened that was unfair? But in this case, there's no question there was a gigantic error. Mr. Damian was retried on counts for which he was acquitted, acquitted by a trial judge. You have to understand that when Mr. Damian first made his deal and did a essentially stipulated facts trial, the judge found him not guilty of one of the shooting at an inhabited dwelling and not guilty of an assault with the deadly and guilty of a lesser included of the assault on Angelica Orozco and her friend. Now, that conviction was ultimately reversed on appeal because of the involuntary confession that my client gave when the officers threatened him with a gas chamber. The court found that that was a little too much. So it goes back down to the trial court. Trial court again introduces the confession. And again, it gets reversed because, of course, you're not allowed to threaten people with a gas chamber. So in the third trial, my client goes to trial alone. And it happens that they just try him on the original information as if the first acquittals had never occurred. And there is just no question whatsoever that that's a violation of double jeopardy. That's obvious. There is no question about that. But the question is really with the deferential standard of review that we're now required to apply, whether the California courts were correct in using Chapman versus California in a harmless error analysis. And you know what the California Court of Appeals said because the presentation of the prosecution's case would have been identical. The error was harmless beyond a reasonable doubt. Number one, you think Morris ought to apply and not Chapman. Well, I mean, I'd love for Chapman to apply because Chapman's more strict than Morris. I mean, if I satisfy Chapman, then I necessarily satisfy Morris. All right. But you agree that it's Morris. So the issue is whether under that standard there was prejudice. That's correct. And there was, unquestionably. The entire theory of the case was that my client was going around with these other gang members on basically a rampage. And the acquittals of the, you know, assault on Mr. Roscoe and the conviction on a lesser included cut against that theory. The problem is an acquittal doesn't bar the use of the evidence. And we were told by the California Court of Appeal that that evidence would have been admissible nonetheless. That's correct. But it wasn't admitted under the right standard. I mean, it was admitted in terms of being proof of a substantive count. It wasn't admitted as 404B evidence. And, Your Honor, it's quite familiar. I mean, California, it's 1101. In federal court, we call it 404B. I understand that. But what difference does that make? Once it comes in, it comes in. Well, that's not correct. Because, as Your Honor Welk knows, you can't just put in 404B evidence. You just put it in. It has to go towards motive, opportunity, lack of a stake. It has to fit within the theory. And it wasn't admitted for that purpose. It wasn't given the limiting instruction. It wasn't appropriately cordoned to its one purpose, which would be in this case. I mean, the only issue, as I pointed out in my briefs, and I don't think it's disputed, the only issue is whether my client had the transferred intent to kill Leo Hookachia. I mean, if he doesn't share that intent, then he's not guilty of murder. Counsel, is it your position that there would be evidence that would not come in? We would try it strictly on the four remaining counts? Let me put it this way. If I were the trial lawyer in this case, I'm conceding that my client's in the car. I'm conceding that there were some crimes committed that night. There's no question these folks were going around, they had a shotgun, and they were doing bad things. However, that's a far cry from conceding that he had the transferred intent to commit murder. Because, again, recall that this was – Conceding that he had the transferred intent. How does the evidence concede that point? Well, no, no, no. What I'm saying is that's the only issue alive in the case is whether my client, when he was driving, shared the intent of the shooter, Mr. Vasquez, to kill Leo Hakuchiya. Then what exactly is it that is the error? You agree that the evidence could come in. How did the evidence – I didn't agree to that. I didn't agree to that. I said that that evidence would only come in as 404B evidence, and it wouldn't be an issue. All right. Well, you said it could come in. I mean – If you wait for Judge Reinhart to finish, we'll be able to understand your answer. Okay. Fair enough. All right. So it came in. Now, you say it was – Is the error because it was not limited? Is the error because of the way it was argued? Is it the fact that there was other evidence? What is the error that justifies a reversal? Well, here's the error. The error is my client was acquitted of the conduct for which this evidence was admitted for. I mean, he has – he's sitting there – Okay. We know that. So now what's the error and what's the prejudice? That's the form. What's the substance? I got you. The – his lawyer could have said, my client, Mr. Damien, has been acquitted of trying to threaten these two girls, the first part of the rampage. He didn't harbor – I mean, he was convicted of brandishing, so he did have an – I mean, obviously, the trial judge found that he was in the vehicle, found that he knew about the gun, but did not find – the only element he didn't find was his intent to actually intimidate or harm. He also found, subsequently, that he didn't harbor the intent to shoot at an inhabited dwelling. I mean, he's got two really good acquittals, really, really good evidence. Okay. But we know that. You're telling us the facts. Now, what is it that's the harm? Well, that wasn't presented at trial. I mean, it – Okay. So you're saying the harm is his lawyer's failure to make the right arguments? It's a big – I mean, that's a big thing, I think, in this case, where you have someone who's convicted. I mean, the only thing he's sitting in prison right now on is the murder conviction, right? I mean, that's it. Would your side have been entitled to an instruction to the jury with respect to this evidence? Yes. That – yes? Yes. And what is your authority for that proposition? Well, I mean – What would the instruction look? The instruction would be he's been acquitted of these counts. And what's your authority that he's entitled to that kind of an instruction? Well, I mean, you just have a general entitlement. I mean, that's Chambers versus – You have any cases that say that? Chambers versus Mississippi. I think that's ordinary. You have a right to put on exculpatory evidence. I think that's – you know, that's the most basic fundament of due process is your ability to say, hey, look, jury, I was acquitted of this conduct. I mean, and that's not presented at trial. That's a pretty big gaffe. I mean, that's for – I mean, someone who's going to spend the rest of his life in prison, who went to trial when he was, what, 19 years old, and he's going to do the rest of his life in, for them not to present the fact that he was acquitted of the counts. And remember, this – if his lawyer goes about the right strategy, there is only one issue in the case. Everything else is conceded. You don't have six counts. You have one. And in that kind of case, that's winnable. I mean, once – I mean, the trial judge – I mean, that's not an easy thing to get a trial judge to acquit you of a brandishing on these kind of – or, I'm sorry, an assault and a shooting at an inhabited dwelling on these kind of facts. And the fact that the trial judge did, I mean, that's something. That's not just the kind of error where you just sweep it under the rug and say, well, that's okay. He's a gang member, so he probably deserves to be in anyway. There's a real issue as to his intent. You wanted to save two minutes? I did. Thank you. May it please the Court, Garrett Beaumont for Appellee. First, responding to a few things that were said, there were three remaining counts, at least, an unlawful discharge at a vehicle, unlawful discharge at a house, and second-degree murder. So there wasn't one charge. There were three good remaining charges. And of the acquittals, one of them, he had been convicted of brandishing. The intent issue wasn't – although this isn't particularly relevant, the acquittals weren't because of his intent. He was acquitted of the Pacific Avenue house shooting because a single shot was responsible both for the shooting at the car, which was one count, in front of that house, and that same shot went into the Pacific Avenue house. So basically, those were an indistinguishable act. There would be no way to separate those two acts out anyway, so that evidence was going to come in. I inadvertently referred to the second house, which was also involving a shooting of a vehicle, but it was the first house, the Pacific Avenue house. And you can look at the excerpts of Record 50 and the supplemental excerpts of Record 27 to 31 if you want to see the facts behind those two counts. Well, he was acquitted of the assault. He was acquitted of one of the two assaults, but he was convicted of brandishing for that assault. Okay, but he was convicted of a lesser count, brandishing, but acquitted of the assault. So what you're left with in the priors were shooting at a house and shooting at a car, which he didn't do directly, right? Right, he didn't do any of those directly. He was aiding and abetting for all the offenses. So let's get down to the question. Obviously, we all know that there was an error, that he was tried again on things he'd been acquitted of. Now, the question is, what harm was there as a result of prosecuting those counts that you couldn't prosecute on? Well, there was no harm because the exact same evidence was going to come in either way. But would it not have come in with an admonition to the jury, if requested, that he had been tried before and acquitted of these counts? No, because those counts wouldn't have been charged. You go back and you cure the double jeopardy problem as it should have been cured before the trial. No, but it wasn't. No, no, the point is, assuming that it wasn't cured before, assuming that this went on, shouldn't the lawyer have said he was acquitted of these counts when the prosecutor said this is a growing rampage? The escalating acts of violence, he committed these assaults, and in fact, he hadn't committed those assaults. Your point is, it wouldn't have happened this way if everybody would have known this, and so he wouldn't have been entitled to an instruction because it wouldn't have happened that way. It did. Well, I cannot envision a case where you try a person on jeopardy barred counts and then tell the jury that he's been acquitted of those jeopardy barred counts. That scenario makes no sense to me. The proper way to try it is to leave the jeopardy barred counts out to begin with. Okay, the jeopardy barred counts would have been out, but the evidence would have come in. Yeah, the evidence would have come in. And if it did, would anybody have been entitled to an instruction, would he have been entitled to an instruction? No. With respect to this evidence, he was acquitted. Well, could you have argued that he committed those assaults when that evidence came in? Well, the argument would have been almost the same because the first of all, the two assaults were one act. He had two women. But he was not convicted of assaults. Did you try this case? No. Well, didn't the prosecutor argue this was a growing rampage, that he committed assaults and then it turned into murder? Well, he would argue the same thing. But he didn't commit the assaults. He committed a brandishing. He committed a shooting. Okay, but there's a difference between a brandishing and assaults and assaulting individuals. Shooting at individuals is different from somebody else brandishing a gun. Yeah, but it's the same species of crime as shooting at a car and shooting at an inhabited house, which he did do. Counsel, I don't think that's correct. I understand the argument that's made here. Murder requires intent. No, it doesn't. You think that the conviction on brandishing would have satisfied one of the elements of murder? Murder, this murder was implied malice, second-degree murder, did not require intent to kill. It required an intentional act with conscious disregard for the consequences. And is that an element of brandishing? It's not a specific element of brandishing, but if you're brandishing a firearm, you're escalating into implied malice, second-degree murder when you actually discharge a firearm. Here's the logic, I think, that the petitioner in this is making, which is that for the murder conviction to be sustained, you would need an element that you can find in assault. You would not need an element. You cannot get to a murder conviction simply on the brandishing conviction, and that the defendant in the criminal trial below, the appellant here, would have been able to say, I was acquitted on the assault charge. And apparently under California evidence rules, that would have come in, and therefore the jury would have had this very important piece of evidence establishing that he did not have the necessary intent or conduct to support the murder conviction. But if he had that instruction, then the prosecution would be able to say, yeah, he was convicted of brandishing, he was convicted of shooting at a house, and he was convicted of shooting at a car and shooting at an inhabited house. Either one of those scenarios is irrelevant. And your position is that that conduct of itself is sufficient to establish the murder conviction? Yes. Second degree implied malice murder it is. You don't need to intend to kill. Which Supreme Court case should we use, Chapman or Morris? Morris is the more lenient standard. So what the California court did was it did more than it had to do, and it found it harmless beyond a reasonable doubt. Using Chapman? Using Chapman. I want to make sure that I understand the record. Why shouldn't this matter be remanded in order to consider this question of the one-year statute? I think you have every opportunity to remand it if you so choose, because the case relied on by the district court not to dismiss it on its own motion was overruled by the United States Supreme Court. Well, but the case was overruled. That doesn't mean that everything in the case is overruled. Is it correct that the government did not raise the one-year power? Right. We didn't raise it. Yeah, we didn't raise timeliness. The court raised it on its own motion, the magistrate judge did, and in a lengthy portion of the opinion said they would dismiss untimely but for the fact that the government waived the issue. But I don't think that the Supreme Court subsequently holds that ruling, does it, or changes that ruling, does it? No, what the Supreme Court held. The government, for whatever reason, chose not to raise this issue. The Supreme Court held that a district court can on its own motion dismiss it. Can means either they could or they could not. You'd have that choice. Right. They don't have to. And didn't the magistrate here make the choice since the government didn't raise it? I guess I don't need to consider it. Yeah, the magistrate here made a very clear statement that the and I read the magistrate judge's decision as saying the only reason I'm not going to dismiss this as untimely is because I cannot do so on my own motion. And that was the You're reading quite a bit into the statement. He did say that you'd missed the deadline, I mean, that you hadn't raised it and that he didn't have the authority to do anything. He didn't say, if I did have the authority, I would. Everything he said was absolutely accurate as of that time. He cited, well, let me put it this way. He cited Nardi v. Stewart, which was binding on him, a Ninth Circuit case binding on him, which said I cannot dismiss this on my own motion. So he didn't have to reach the question of whether he would have if he had the authority. But anyway, back to the merits of this. I just read the closing argument again. Repeatedly through the argument, the argument to the jury is that this man is guilty of assault. And because he's guilty of assault, you can infer this is a growing thing. The next thing he's going to do is the murder. And that was a major part of the argument to the jury. And it was just wrong because they couldn't make that conclusion. But they set on a course to commit assault with a deadly weapon, assault with a firearm. The whole call it assault with a deadly weapon, set on that course, assault with a deadly weapon would escalate. When, in fact, none of that was proper for the jury to consider. Those were excerpts from the argument that were taken out of the entire argument. And I would invite the Court, if it's concerned with the issue, that the transcripts are down to the District Court, of course. And it could look at both the prosecution and the defense argument. What are we going to find if we do that? This is the whole transcript of the prosecution argument I was reading from. Oh, if you have it already, then that's fine. But I invite you to look at the whole argument. For what purpose? Well, the purpose was the 15-minute crime spree, which included, well, in this case, for the defendant brandishing a firearm, the first offense. The second, shooting at an inhabited vehicle. The third, shooting an uninhabited vehicle. Third offense, shooting inhabited residents. Those crimes escalate up to the last crime, which is attempted murder, which is implied malice murder. All of these crimes are committed in gang territory. They're all committed for the purpose of getting back at a rival gang. But the big difference between the ones you mentioned and the one that you emphasized so in the argument is the others are property crimes, basically. This is an assault on an individual with a deadly weapon that leads to a murder. Well, the inference you're asking a jury to draw that somebody who's in this escalating thing of attacking human beings and the next step is first you shoot at a woman and then you kill the next one is a lot different from saying you're on, you know, going around causing trouble and shooting at buildings, shooting at cars. It's a big step to say there's somebody who's guilty of assault with a deadly weapon when that's not a proper argument. Well, I know it was not done deliberately because nobody remembered. I mean, I don't know how this can happen in a trial, but in any event, it wasn't a willful act. But it was an argument to a jury that this person is guilty of shooting at other individuals. And so the next step, the next one you hit. And that's not something that could be done because that was barred by the acquittal. Well, the shooting at the, recall that the last crime committed before the second degree murder was not only shooting a house, it had to be inhabited, shooting at an inhabited house in gang territory. So you have the same argument that you have escalating crimes committed with a firearm. And you don't have, you know, he's not, the prosecutor doesn't have to have the theory that this was an intent to kill the murder victim. But rather, in fact, all the testimony was that the defendant U-turned, he was the driver by the time of the shooting, helped point out the person that was shot. And then they all said, well, let's scare him. And the perpetrator, who remains at large as far as I know, had the shotgun out the window as a prosecutor. And they said, let's scare him. And he shot the victim. And we don't even know to this day whether it might have been an accidental shooting, might have been intentional, might have been intent to kill. But you have an implied malice theory there that's exactly, in my view, exactly the same based on escalating conduct and the evidence behind that escalating conduct. And, you know, with or without the acquitted counts being dismissed before the trial. Thank you, counsel.  Briefly, Your Honors, that should have been my reply brief. I mean, his whole argument is this escalating conduct, escalating conduct we know that doesn't square with the prior acquittals. This whole, counsel pretends like there's no such thing as involuntary manslaughter. There is such a crime. When you commit some sort of act which does not involve an intent to kill, but is dangerous, you know, like waving a shotgun around and you end up killing someone, there is a crime. But it's not second degree murder. It's involuntary manslaughter. It's important to note, I mean, remember the facts of this. I mean, this is a terrible thing. And it's very sad what happened here. But this was a sawed-off shotgun shot at quite some distance from this kid. And it hit him. It's very difficult to say whether Vasquez actually intended to shoot the victim or not. It's even more difficult to say that my client shared the intent that this guy waving a shotgun from, I don't know, 10, 20, 30 feet away, that he shared an intent to kill. And whether you call that, you know, implied malice or a specific intent to kill is really, you know, it's a fine gradation. And given that, we know that the prosecution's whole argument was, this is a rampage. It's escalating. And we know this isn't true. We know that he's been acquitted of having an intent to harm the two girls, having intent to shoot an inhabited dwelling. That evidence would be important, persuasive, and perhaps sufficient to acquit him of the second-degree murder. And in that instance, I think the right move is to send this one back to the trial court and let him take a shot with the correct evidence. Quickly on Dave versus McDonough, the magistrate said the argument was waived. He didn't say, you know, we would have. He didn't say he would have, but he said that he did not have the authority. Well, he actually says waived. Page 136 of the yard. No, he said the state, yes, that the state waived it. But that didn't mean that he didn't have the authority. Even if the state waives it under the current law, he could do it. Correct. So there's no, he said the state waived it, he was right. He said, I don't have the authority, which was the law at the time. Right. And he didn't say anything more. And we don't know whether he would have had he had the Supreme Court case come down before then. We don't know what he would have done. True. But make him object. That's what I have to do. Thank you. Thank you, Your Honors. Case just argued is submitted. The next case on the calendar is United States versus Lloyd. Good morning, Your Honors. I'm Michael Severo. I represent Mr. Lloyd.
judges: Reinhardt, Trott, Robart